MJB INVESTMENTS, a partnership; Ivan M. (Toddy) McCann; Mrs. Dale (Betty) Johnson; Glen Boden and Wayne Boden, Appellants (Defendants),

Gillette Mall Associates, a partnership; Lela E. McCann; D–S Development Corporation, a Montana Corporation; and Gillette Partners Limited, an Ohio Partnership (Defendants),

v.

Jonathan E. COXWELL, d/b/a Coxwell Architects, Appellee (Plaintiff).

No. 5240.

Supreme Court of Wyoming.

May 14, 1980.

Thomas D. Roberts, Morgan & Brorby, Gillette, for appellants.

Timothy S. Tarver, Koester & Tarver, Sheridan, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

McCLINTOCK, Justice.

Jonathan E. Coxwell, plaintiff, was awarded summary judgment for unpaid architectural services against Gillette Mall Associates, D–S Development Corporation, MJB Investments, Ivan M. McCann, Betty Johnson, Glen Boden, and Wayne Boden, defendants. The individual defendants were joint venturers undertaking the development of a shopping center. The sole question raised on appeal is whether there is a genuine issue of material fact as to whether defendants are liable for the payment of the architectural fees. We hold that the record does not raise a genuine issue of material fact and that the summary judgment was proper.

MJB Investments, a partnership composed of Ivan M. McCann, Betty Johnson, Glen Boden and Wayne Boden, entered into a written joint venture agreement in December of 1975 with D–S Development Corporation for the purpose of developing a shopping center. The venture was called Gillette Mall Associates. The joint venture agreement provided that D–S Development Corporation was to do the development work for the project and arrange for the financing. MJB Investments was to provide the land upon which the shopping center was to be built. The profits were to be divided equally between D–S Development Corporation and MJB Investments.

In accordance with the joint venture agreement, D–S Development, with the approval of MJB Investments hired Coxwell to design the shopping center. The pertinent part of the joint venture agreement provides:

"It shall be the obligation of D–S, upon mutual agreement with MJB, *to obtain for the Venture an architectural firm* licensed to do business in the State of Wyoming, *for the preparation of plans and specifications* and for supervision relative to the construction of the shopping center, including site improvement." (Emphasis added.)

In November of 1976 the venture, Gillette Mall Associates, D–S Corporation and Coxwell executed a standard form of agreement for architectural services. The contract provided for progressive payments to Coxwell based on the percentage of work compiled and the amount of reimbursable expenses incurred. After the contract was signed Coxwell began performing his obligations under the contract. However, sometime during the latter part of 1977 or the early part of 1978 the venture began experiencing financial difficulties. In November of 1978, after a substantial amount of the architectural work had been completed by Coxwell, Coxwell ceased performance because he had not been paid by the venture since early 1978. By this time Coxwell had earned $34,622.93, including reimbursable expenses, $20,391.40 of which had been paid. In March of 1979 Coxwell instituted the present cause of action seeking among other things payment for the architectural services rendered. The trial judge entered summary judgment against all defendants, finding that there was no genuine issue of material fact regarding Coxwell's claim for relief.

Coxwell's claim for relief is based upon the fact that he entered into a written contract for architectural services with Gillette Mall Associates; that MJB is a joint venturer in Gillette Mall Associates; and that Ivan McCann, Betty Johnson, Glen Boden and Wayne Boden are members of the partnership known as MJB Investments; and therefore the joint venturer is liable for the debt of the venture and the partners

are liable for the debt of the partnership. Appellants, on the other hand, contend that there exists a genuine issue of material fact as to whether they are liable for the architectural fees because the joint venture agreement provides that D–S Development was to be responsible for hiring the architect for the project.

We begin our inquiry with the often-quoted principle that summary judgment is proper only where there is no genuine issue of material fact. *Moore v. Kiljander*, Wyo., 604 P.2d 204, 207 (1979). A material fact is one in which proof of that fact would either establish or refute an essential element of the cause of action or the defense to the cause of action. *Johnson v. Soulis*, Wyo., 542 P.2d 867, 871–872 (1975).

In the case at bar appellants do not contend that a joint venture did not exist. Therefore, in determining whether summary judgment was proper we need only determine whether D–S Development was acting within the scope of the venture when it entered into the architectural contract.

"A joint venture requires only that the parties combine their property, money, efforts, skill or knowledge in some common undertaking," *Wood v. Western Beef Factory, Inc.*, 10 Cir., 378 F.2d 96, 98 (1967), and each party's contribution need not be of the same character. *Wood*, supra. Although a joint venture is formed for a specific transaction, and a partnership is ordinarily formed to carry on a continuing business, the incidents of both relations are basically the same. *Bank of California v. Connolly*, 36 Cal.App.3d 350, 111 Cal.Rptr. 468, 477 (1973), reh. denied. As this court has often stated, joint ventures are governed by the same rules of law as partnerships. *P & M Cattle Co. v. Holler*, Wyo., 559 P.2d 1019, 1021 (1977). Just as one partner can bind his fellow partners in transactions made in the course of the enterprise, Uniform Partnership Act, § 17–13–301(a), W.S.1977, one joint venturer can bind the other joint venturers in transactions that are within the scope of the venture. *Wood*, supra, 378 F.2d at 98–99 (1967); *Baker Farmers Company v. Harter*, 28 Ill.App.3d 393, 328 N.E.2d 369, 372 (1975). The only question, then, is whether D–S Development was acting within the scope of the venture when it hired Coxwell to design the shopping center.

The mere fact that the joint venture agreement provides that D–S Development was "to obtain for the Venture an architectural firm . . . for the preparation of the plans and specifications" answers this question. D–S Development was acting within the scope of the venture when it contracted with Coxwell, and therefore both D–S Development Corporation and MJB Investments are liable for the architectural fees and reimbursements. Whatever may have been the contractual rights and obligations of D–S Development Corporation and its co-adventurers as between themselves, they were no part of the written agreement with Coxwell, and he is not concerned. Just as MJB Investments is liable for the debt, so are the individuals that make up this partnership. Partners are jointly liable for the debts of the partnerships. § 17–13–307, W.S.1977.

Finding no genuine issue of material fact, we affirm.