Robert ZWEMER and Sharla Zwemer,
husband and wife, and Lillian
Zwemer, Appellants (Defendants),

v.

PRODUCTION CREDIT ASSOCIATION
OF MIDLANDS, f/k/a Wyoming
P.C.A., Appellee (Plaintiff).

No. 89–221.

Supreme Court of Wyoming.

May 23, 1990.

Lawrence A. Yonkee of Redle, Yonkee & Arney, Sheridan, and Joseph E. Darrah of Joseph E. Darrah, P.C., Powell, for appellants.

Tracy J. Copenhaver of Copenhaver, Kath & Kitchen, Powell, and Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

Appellants Robert Zwemer and Sharla Zwemer appeal from a summary judgment denying their lender liability claim against Appellee Production Credit Association of Midlands (PCAM). The district court concluded that the Zwemers were judicially estopped from asserting their claim because they failed to properly disclose the claim in a previously filed bankruptcy case.

We affirm.

The Zwemers raise the following issues:

I. The District Court err[ ][ ]ed in granting summary judgment in that there were unresolved material issues of fact pertaining to the issue of judicial estoppel.

II. The District Court err[ ][ ]ed as a matter of law and fact that the Appellants were judicially estopped to pursue their counterclaim by failing to properly apply or consider all elements essential to estoppel.

PCAM filed a complaint alleging that the Zwemers had defaulted in the payment of loans made to them and praying, *inter alia*, for a judgment for the accelerated amount of the loans. The Zwemers filed an answer and a counterclaim, asserting that PCAM breached the parties' loan agreement, breached its fiduciary duty to the Zwemers, and negligently processed the loans.

The Zwemers subsequently filed a chapter 11 bankruptcy petition. During the pendency of their bankruptcy case, the Zwemers listed their personal property on a B–2 schedule, but they failed to indicate on the schedule that they had filed a counterclaim against PCAM. The schedule specifically required the disclosure of "[c]ontingent and unliquidated claims of every nature, including counterclaims of the debtor (give estimated value of each)." The Zwemers also failed to mention their coun-

terclaim against PCAM in their bankruptcy disclosure statement. The federal bankruptcy court modified the automatic stay, allowing PCAM to pursue its claim, and approved the Zwemers' reorganization plan.

PCAM filed an amended complaint alleging that the Zwemers had defaulted in the payment of their loans, that the Zwemers committed fraud during their bankruptcy reorganization,[1] and that the Zwemers were judicially and equitably estopped from asserting their counterclaim. The Zwemers answered PCAM's amended complaint, generally denying its allegations, and asserted as affirmative defenses that PCAM failed to state a claim upon which relief could be granted, that PCAM was estopped from claiming that the Zwemers could not raise their counterclaim, and that the district court did not have jurisdiction over bankruptcy matters. The Zwemers based their estoppel argument on the contention that PCAM knew of the Zwemers' intention to pursue their counterclaim. PCAM filed a motion to dismiss the Zwemers' counterclaim pursuant to W.R.C.P. 12(b)(6) and (c), claiming that the Zwemers were judicially estopped from asserting the claim because they failed to properly disclose its existence during the pendency of the bankruptcy case.

The district court converted PCAM's motion to a motion for summary judgment and granted a summary judgment in favor of PCAM. In its decision letter, the court stated that the Zwemers were judicially estopped from asserting their counterclaim because they maintained "(1) two positions contrary to each other (2) both of which [were] asserted by the same party (3) in different judicial proceedings." This appeal followed.

A district court's decision to grant a summary judgment is proper "if no genuine issue of material fact exists and if the prevailing party is entitled to a judgment as a matter of law." *Ware v. Converse*

*County School District No. 2*, 789 P.2d 872, 874 (Wyo.1990). *See also St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1*, 763 P.2d 1255 (Wyo.1988); and *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School District Number One*, 763 P.2d 843 (Wyo.1988). The question in this case is whether the Zwemers were judicially estopped from asserting a counterclaim against PCAM because they did not adequately disclose their intent to pursue the claim during the pendency of their bankruptcy case.

This Court has previously applied the doctrine of judicial estoppel. *Anderson v. Sno–King Village Association, Inc.*, 745 P.2d 540 (Wyo.1987), *appeal dismissed and cert. denied* —— U.S. ——, 109 S.Ct. 29, 102 L.Ed.2d 9 (1988); *Texas West Oil and Gas Corporation v. First Interstate Bank of Casper*, 743 P.2d 857 (Wyo.1987), *reconfirmed* 749 P.2d 278 (Wyo.1988); *AMFAC Mechanical Supply Co. v. Federer*, 645 P.2d 73 (Wyo.1982); *Allen v. Allen*, 550 P.2d 1137 (Wyo.1976). Those cases established the principle that a party is judicially estopped from asserting inconsistent positions in different judicial proceedings. We stated in *Allen*, 550 P.2d at 1142:

> [J]udicial estoppel[ ] is sometimes referred to as a doctrine which estops a party [from] play[ing] fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath.

We must now determine whether the Zwemers maintained a position during the pendency of their bankruptcy case which was inconsistent with the counterclaim they asserted in the district court proceedings. The parties do not dispute that the Zwemers failed to mention their counterclaim in their asset schedule and disclosure statement. 11 U.S.C. § 521(1) (1988) requires a person[2] or municipality who has

---

**1.** PCAM based its fraud claim on the allegation that the Zwemers represented they would not pursue their counterclaim after the stay was lifted.

**2.** 11 U.S.C. § 101(35) (1988) defines a person as an "individual, partnership, and corporation, but does not include governmental unit."

filed a bankruptcy petition to "file a list of creditors, and unless the court orders otherwise, *a schedule of assets and liabilities,* a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." (Emphasis added.) In addition, 11 U.S.C. § 1125(b) (1988) requires a debtor to file a disclosure statement containing adequate information. Adequate information is defined as

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan * * *.

11 U.S.C. § 1125(a)(1) (1988).

In two recent cases, the United States Court of Appeals for the Third Circuit and the United States District Court for the Northern District of Iowa addressed situations in which bankruptcy debtors failed to meet the disclosure requirements of 11 U.S.C. §§ 521 and 1125 (1988). In addition, both debtors in those cases failed to report potential claims in the proposed reorganization plans. Both courts held that the debtors were estopped from asserting lender liability claims after the bankruptcy court confirmed their reorganization plans because the debtors failed to adequately disclose the existence of those claims during the pendency of their bankruptcy cases.[3] *Hoffman v. First National Bank of Akron, Iowa,* 99 B.R. 929 (N.D. Iowa 1989); *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.), *cert.*

*denied* —— U.S. ——, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). The *Hoffman* court stated that the

> Debtor had a duty to amend his schedules to reflect [the] claim and to disclose the existence of the potential cause of action to creditors in his plan and disclosure statement.

*Hoffman,* 99 B.R. at 933.

The Zwemers contend that statements in a stipulation and in the Zwemers' proposed reorganization plan provided adequate disclosure of their intent to pursue a counterclaim. In its order modifying the automatic stay, the bankruptcy court incorporated a stipulation which had been signed by both parties. The stipulation said, "disputes between [PCAM] and [the Zwemers] regarding personal property described by the security agreement may be litigated in State District Court without violation of the automatic stay." The Zwemers' second amended reorganization plan stated that the district court would resolve all disputes between PCAM and the Zwemers. Those statements did not disclose the existence of the Zwemers' counterclaim or their intent to pursue the claim. The Zwemers also argue that they should not be estopped from asserting their counterclaim because they filed it before they initiated bankruptcy proceedings and because their attorney conveyed their intent to pursue the claim during the bankruptcy proceedings.

Irrespective of the Zwemers' contentions, the fact remains that the Zwemers did not meet the disclosure requirements of §§ 521(1) and 1125(b), and they did not mention the claim in their proposed reorga-

---

**3.** Both courts also relied upon the doctrine of equitable estoppel. In *Hoffman v. First National Bank of Akron, Iowa,* 99 B.R. 929, 935 (N.D. Iowa 1989), the court stated:

> The difference between judicial estoppel and equitable estoppel is the focus of the two doctrines. "Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to prior litigation." *Oneida Motor Freight, [Inc. v. United Jersey Bank,]* 848 F.2d 414, 419 (3rd Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). "Judicial estoppel lies when a party, after assuming

a certain position in a legal proceeding, attempts to assume a contrary position. It applies whether the position first assumed has been successful or not." *Galerie Des Monnaies [of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch],* 55 B.R. [253,] 259 [ (Bkrtcy.S.D.N.Y.1985) ] (citations omitted). "Judicial estoppel is invoked in these circumstances to prevent the party [from] 'playing fast and loose' with the courts, and to protect the essential integrity of the judicial process." *Galerie Des Monnaies [of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch],* 62 B.R. [224,] 226 [ (S.D.N.Y.1986) ] (citations omitted).

nization plan. Disclosure was vital not only to PCAM but also to the Zwemers' other creditors and the bankruptcy court. *Oneida Motor Freight, Inc.*, 848 F.2d 414. Proper disclosure of the existence of the Zwemers' counterclaim could have had a significant effect on the decision by the Zwemers' creditors to accept or reject the reorganization plan.

The Zwemers' failure to reveal the existence of their counterclaim in their schedule of assets, disclosure statement, or proposed reorganization plan established a position which was inconsistent with the position subsequently asserted in the district court. Consequently, we hold that the Zwemers are judicially estopped from asserting their counterclaim.

Affirmed.

THOMAS, Justice, dissenting, with whom URBIGKIT, Justice, joins.

I must dissent from the disposition of this case according to the majority opinion. This is not a case in which the Production Credit Association of Midlands (PCAM) is entitled to prevail because of judicial estoppel. I join in the dissenting opinion of Justice Urbigkit, and I add a proposition that has significance for me.

In my view, the majority opinion has held the law of judicial estoppel up to the mirror and read it backwards. Aided by more than a little smoke supplied by PCAM, the majority has performed a classic smoke and mirror trick, which has to amaze even the most perceptive observer. This court has said:

> " * * * Judicial estoppel denies the right to take inconsistent positions in subsequent litigation." *Texas West Oil Corp. v. First Interstate Bank of Casper*, 743 P.2d 857, 866 (Wyo.1987).

> " * * * [T]he foregoing cases tend to show that such evidence may at times, in cases in which, as here, *a man is successful in the position taken in the first proceeding*, rise to the dignity of conclusiveness." *Hatten Realty Co. v. Baylies*, 42 Wyo. 69, 93, 290 P. 561, 568, 72 A.L.R. 587, 599–600 (1930) (emphasis added).

The *Hatten* case was followed in *Allen v. Allen*, 550 P.2d 1137 (Wyo.1976). Other cases in which the doctrine of judicial estoppel is discussed are in accord with the requirement that the inconsistent position be asserted in the second instance even though the court did allude to separate proceedings. In each of those cases, the estoppel was invoked in the second proceeding. *Amfac Mechanical Supply Company v. Federer*, 645 P.2d 73 (Wyo.1982); *Snell v. Ruppert*, 582 P.2d 916 (Wyo.1978); *Gray v. Fitzhugh*, 576 P.2d 88 (Wyo.1978).

It is clear from the discussion of the facts in the majority opinion that the Zwemers filed their answer and asserted their counterclaim in this state court action prior to the filing of their bankruptcy petition. The bankruptcy was the subsequent litigation in this instance. If the failure to mention the counterclaim in the B–2 schedule in the bankruptcy proceeding was inconsistent with the state court action, that was the occasion for PCAM to cry foul. PCAM did nothing in the bankruptcy court apparently preferring to reserve this contention until after the bankruptcy court had modified the automatic stay so that the state court litigation could go forward. There was no essential change in the state court action, or the issues presented in the counterclaim, after the bankruptcy stay was lifted other than the assertion of judicial estoppel and fraud by PCAM. In deciding the case in favor of PCAM, the trial court applied the doctrine of judicial estoppel inversely, and this court has done the same thing in affirming.

The conclusion is ineluctable that judicial estoppel does not apply in this case because the Zwemers are being estopped from maintaining a position first asserted in the state court action due to what was probably nothing more than an inadvertent failure to include the counterclaim in the appropriate schedule in the second case, which is the bankruptcy proceeding. Justice depends upon more than smoke and mirrors. I would reverse the summary judgment in favor of PCAM and permit the Zwemers to try their case.

URBIGKIT, Justice, dissenting, with whom THOMAS, Justice, joins.

The decision of the majority to affirm this summary judgment based on judicial estoppel ignores clearly presented issues of material fact evident in the record. While I recognize that the policy behind judicial estoppel is to preserve sanctity and integrity of the judicial system, *Allen v. Allen,* 550 P.2d 1137, 1142 (Wyo.1976); *see also* Comment, *Precluding Inconsistent Statements: The Doctrine of Judicial Estoppel,* 80 Nw.U.L.Rev. 1244, 1245, 1249 (1986), this summary disposition of the Zwemers' claim flies in the face of this policy by locking the Zwemers out of the courthouse contravening our constitutional mandate to keep the courts open to all. Wyo. Const. art. 1, § 8. For this reason, I dissent.

Omitted from the majority opinion is our often-stated standard of review in summary judgment cases. That omission compels me to reiterate it here. As we recently said:

> Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. * * * We review a summary judgment in the same light as the district court, using the same materials and following the same standards. * * * *We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record.*

*Wagner v. First Wyoming Bank, N.A. Laramie,* 784 P.2d 224, 226 (Wyo.1989) (emphasis added). Reviewing the record in the light most favorable to the Zwemers, the party opposing the motion, as we are required to do, I find it impossible to conclude that no genuine issues of material fact exist which relate to the decision whether judicial estoppel should properly be applied. *Greenwood v. Wierdsma,* 741 P.2d 1079 (Wyo.1987); *Cordova v. Gosar,* 719 P.2d 625 (Wyo.1986).

The entire question of how the parties obtained relief from the bankruptcy code automatic stay, 11 U.S.C. § 362 (1988), in order to pursue the claim and the counterclaim leaves much to speculation. What is not a matter of speculation is that Wyoming Production Credit Association of Midlands (WPCA) was aware at every step of this litigation that the Zwemers always intended to pursue their counterclaim. Before zeroing in on the tactic of claiming the Zwemers should be judicially estopped, WPCA moved to dismiss the claim for failure to prosecute pursuant to W.R.C.P. 41(b)(1). This court would have not permitted dismissal of this action if called upon to weigh the equities between WPCA and the Zwemers, for WPCA's knowledge of the Zwemers' intentions certainly dirties its hands. *Lewis v. State Bd. of Control,* 699 P.2d 822 (Wyo.1985); *Walker v. Bd. of County Com'rs, Albany County,* 644 P.2d 772 (Wyo.1982).

It is clear that the stay was lifted on the parties' stipulation, but what the bankruptcy court knew of the state district court litigation is not clear. Thus, the bankruptcy court's knowledge remains a question to be answered through fact finding.

The stipulation signed by the parties states that "disputes between WPCA and Debtors [the Zwemers] regarding personal property described by the security agreement may be litigated in State District Court * * *." The meaning of that statement is not clear in light of the fact that each party had a claim pending against the other and neither party denied it. I become even more concerned when I read the form of the stipulation first submitted by the Zwemers. This proposed stipulation was sent to WPCA in April 1985 and was part of the record as an exhibit attached to the affidavit of Ronald P. Jurovich, the Zwemers' attorney for the bankruptcy action. It references the counterclaim numerous times throughout the document, including paragraphs 7 and 8 which state:

> 7. It is the express intention of the parties hereto, Plaintiff, Wyoming Production Credit Association, Creditor herein, and Robert Zwemer and Sharla A. Zwemer, Defendants and Counterclaimants and Debtors herein, to proceed to trial with Civil Action No. 14115, and to

allow the parties to pursue their respective claims in the District Court, Fifth Judicial District, State of Wyoming.

8. It is further the intention of the parties that the Relief From the Automatic Stay be modified only to permit the parties to continue the aforementioned suits and counterclaim now pending in the District Court, Fifth Judicial District for the State of Wyoming.

The record contains very little from the bankruptcy action. It gives us no clue as to why the stipulation "evolved" from one clear and concise statement concerning the counterclaim to the cryptic reference to the parties' "disputes" contained in the stipulation actually executed. There are numerous inferences that could be drawn from this. We can and should give the Zwemers the benefit of the most favorable inferences which can fairly be drawn from the record. At this stage of the proceeding, those inferences include that the Zwemers were not blowing " 'hot and cold in the same breath * * * [nor maintaining] inconsistent positions.' " *Anderson v. Sno-King Village Ass'n Inc.*, 745 P.2d 540, 545 (Wyo.1987), *cert. denied* — U.S. ——, 109 S.Ct. 29, 102 L.Ed.2d 9 (1988) (quoting *Am-*

*fac Mechanical Supply Co. v. Federer*, 645 P.2d 73, 79 (Wyo.1982)). If further fact finding indicates otherwise, then so be it.

We must infer, in determining the propriety of granting this summary judgment motion, that the bankruptcy court knew that the Zwemers' and WPCA's stipulation to settle their disputes included the parties' intention to settle the dispute over the Zwemers' counterclaim. To do less is to pervert the concept of judicial estoppel. This record does not justify that decision to be made as a matter of law when it cannot be actually and practically made as a matter of established facts. This is a misuse of summary judgment which denies the litigant a trial for resolution of contested facts. *Atlas Const. Co. v. Slater*, 746 P.2d 352 (Wyo.1987).

Consequently, I respectfully dissent.